The Executors of Smedes *against* Elmendorf.

THIS was an *action on the case* against the defendant for negligence as an attorney. The cause was tried before Mr. Justice *Spencer*, at the last *Ulster* circuit.

The declaration stated, that the testator on the 31st day of *January*, 1795, delivered to the defendant a promissory note, dated the 10th *May*, 1795, for 35*l.* (equal to 87 dollars and 50 cents) made by one *Lewis Hardenbergh*, jun. payable to the testator, to be collected by the defendant as an attorney; that during two years from and after the 31st *January*, 1795, the said *Hardenbergh* was frequently in the state of *New-York*, and amenable to process, which was known to the defendant, and that he was solvent, and able to pay the note; and that the defendant, &c. The defendant pleaded the general issue.

At the trial, the plaintiffs produced a receipt in the following words:

" Received, 31st *January*, 1795, a note of hand, commonly called a promissory note, for 35*l.* dated 10th *May*, 1794, given by *Lewis Hardenbergh*, jun. to *Peter Smedes*.

" *Cd. Ed. Elmendorf.*"

[The note was payable on demand, and no interest expressed.]

It was proved, that while this suit was pending, and before the trial, the defendant said that he had in hands a note in favour of *Peter Smedes*, against *L. Hardenbergh*, who had moved away and become insolvent, and that he could not get the money; but whether he said that he had received it to collect, or that the executors alleged that he had so received it, the witness was not certain. It appeared, that *Hardenbergh* moved to the state of *New-Jersey*, in *May* or *June*, 1794, where he resided until his death in 1796; that he was in the county of *Ulster*, for about three weeks, in the winter of 1795, and was seen within eight miles of *Kingston*, where the defendant resides; that he was again in *Ulster* county, in the winter of 1796, and again in *May* or *June* of the same year. It was proved, that *Harden-*

Where an attorney gave a receipt for a promissory note without expressing the purpose for which he received it, it was held, that the presumption was, that he received it to be collected, and that this presumption, confirmed also by other circumstances, was sufficient evidence to support an action against him, by the payee of the note, for his neglect in suing the maker, who afterwards became insolvent.

*bergh* was one day in *Kingston* in the winter of 1795, but that he was principally, while in *Ulster* county, during that winter, at *New Paltz*, about 13 miles from *Kingston.* The plaintiff also produced in evidence, a receipt given by the defendant to *Hardenbergh*, dated the 5th *February*, 1796, for certain bonds and notes to collect, and it was proved, that the defendant was the agent of *Hardenbergh* after he removed to *New-Jersey.*

The defendant then moved for a nonsuit, but the motion was overruled by the judge.

The defendant proved, that in *August*, 1795, one *Brush* was the agent of *Hardenbergh*, and that in 1794, one *Dewitt* had a power of attorney from him.

The defendant further proved, that it was the usual practice of the defendant, in his business, to enter the cause in his register, as soon as a note was received for collection ; that no cause was entered in the present case, and that it was usual when a receipt was given for a note intended to be left for collection, to express in the receipt that it was to be collected. It appeared that the testator had lost money by *Hardenbergh*, and that he did not know that the defendant was his agent.

The judge charged the jury, that from the receipt given by the defendant, it was to be presumed, that the note was left for collection ; but that circumstances might explain for what purpose it was received ; and that the jury might presume that it was left for collection ; that the receipt given by the defendant to *Hardenbergh* in 1796, was proof that he had seen *Hardenbergh* at that time ; that interest was to be calculated on the note from the time of the plaintiff's neglect. The jury found a verdict for the plaintiff, for the principal of the note, with interest from its date.

The defendant moved to set aside the verdict, and for a new trial ;

1. Because, the evidence did not support the declaration :

2. Because, the judge misdirected the jury :

3. Because, the verdict was against evidence.

*Sudam*, for the defendant. The receipt given by the defendant does not express any agency. It does not follow,

from the profession of an attorney, that he is to prosecute and collect a note left in his hands, nor does that circumstance afford *prima facie* evidence that the defendant undertook to collect the note which was left with him. The defendant is not answerable beyond the terms of his receipt; and there was no parol evidence to show any special agency, or undertaking on his part. Had he issued process, and neglected to prosecute the suit effectually, there would then have been some ground to have presumed his undertaking to collect the note.

*Hawkins,* contra, contended, that if a note be left with an attorney, in the usual course of business, it affords a strong presumption, that it was for the purpose of being collected by legal means. As, if cloth be left with a taylor, it is presumed that it is to be made into a garment.

Spencer, J. delivered the opinion of the court. On the motion to set aside the verdict in this cause, the defendant's counsel has insisted,

1. That the charge of the judge to the jury was incorrect, in stating that the receipt for the note created a presumption, that the note itself was lodged with the defendant for collection.

2. That the verdict was against the weight of evidence, as to any neglect on the part of the defendant in collecting the note, and as to its being left with him for collection.

1. That an attorney is responsible for negligence of the trust reposed in him, by a client, has not been questioned. The plaintiff's claim in this case is, that he placed a note in the hands of the defendant against *Lewis Hardenbergh, jun.* for collection; that *Hardenbergh* was solvent and liable to arrest, and that by his subsequent death and insolvency the debt is lost, through the defendant's culpable negligence.

The receipt is in general terms for a note, the date and amount of which is expressed. It seems to me to be a proposition which cannot be doubted, that when an attorney, whose office and business it is to prosecute and collect notes and other demands, gives a general receipt for the evidence of a debt then due, that it must be presumed,

*prima facie*, that he received it in his capacity of attorney, for the purpose of collection, and that it is incumbent on him to show that he received it specially, and for some other purpose, if he would avoid the consequences resulting from such general intendment.

Upon the fullest reflection, and reconsideration of this point, I think that the opinion I delivered to the jury was correct. To fortify the presumption arising from the receipt, the defendant's conversation with one *Helm*, was given in evidence, in which the defendant stated, that he had a note *in hands* for *Smedes* against *Hardenbergh*, and that he had received the note for collection, or that the executors said he had so received it; the witness was inclined to believe, that the defendant said he had received it for collection. It is true that a suit was then pending against the defendant, for his neglect of duty in relation to this note, and it is improbable that he would admit away his cause; but the manner of his receiving the note was not the only point to arise; it was essential also to prove his neglect. The expression made use of by the defendant, that he had a note *in hands* for *Smedes* against *Hardenbergh*, is a very significant one, and undoubtedly fairly imported that he had it in his professional character. The evidence arising from the defendant's not entering the cause in his register, and that the usual form of receipts for notes expressed their being left for collection, does not sufficiently rebut the presumption already mentioned, and the declarations of the defendant. The non entry of the cause has, most probably, occasioned the neglect of issuing process, and the general form of receipts, by no means proves that there were no exceptions. I still think that the purpose for which the defendant received the note, is almost irresistibly to be inferred from the receipt, from his being an attorney, and from his giving no account of its having been left with him for any other purpose.

2. Was the neglect of duty made out by the evidence? It appears to me that the receipt of the 6th of *February*, 1796, to *Hardenbergh* for bonds and notes to collect, in the hand-

writing of the defendant, and purporting that they were received from *Hardenbergh*, taken in connection with the fact, that at that period he went to *Kingston*, and that the defendant was his agent, shows satisfactorily, that the defendant saw *Hardenbergh*, and knew that he was then liable to process, and establishes a culpable neglect in not issuing a writ against him.

The declarations of *Smedes*, that he had lost money by *Hardenbergh* were left to the jury, with such observations as I then thought, and still think proper. If they applied to this note they would not have the influence which has been supposed ; he might have been ignorant of his right against the defendant, or ignorant of the fact, that the defendant had been culpable.

The court are of opinion, that the verdict was warranted by the evidence, and that a new trial ought not to be granted.

Rule refused.