stifle" certain contemplated attacks upon defendant, and that plaintiff said that he had better pay before it was too late. The record shows that there was a clear issue of fact on the question of want of probable cause and malice, which ought to have been submitted to the jury on the count for malicious prosecution.

For this reason we think the judgment should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.

---

## PARKER–SMITH v. PRINCE MFG. CO.

(Supreme Court, Appellate Division, Second Department. April 14, 1916.)

1. ATTORNEY AND CLIENT ⬅167(2) — ATTORNEY'S NEGLIGENCE — ACTION — TRIAL.

Evidence that plaintiff, suing for compensation as an attorney, erroneously advised as to statute of limitations applicable to the payment by a bank of forged checks, *held* sufficient to warrant submission of the question of negligence.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 374; Dec. Dig. ⬅167(2).]

2. ATTORNEY AND CLIENT ⬅107—DUTY OF ATTORNEY—NEGLIGENCE—SKILL AND CARE.

Erroneous advice as to the application of the statute of limitations is not necessarily negligence, for there may be a question whether the error indicates lack of due professional care and skill.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 218; Dec. Dig. ⬅107.]

3. ATTORNEY AND CLIENT ⬅109—DUTY OF ATTORNEY—ACTIONABLE NEGLIGENCE.

The loss of a remedy through negligent advice is not necessarily actionable negligence, for there may be another remedy equally efficacious.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 221, 222; Dec. Dig. ⬅109.]

4. ATTORNEY AND CLIENT ⬅161—ACTIONS FOR COMPENSATION—DEFENSES.

Culpable negligence of the attorney is a defense to an action by him to recover compensation.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 359; Dec. Dig. ⬅161.]

5. BANKS AND BANKING ⬅119—DEPOSITS—RELATION OF BANK AND DEPOSITOR.

The relation of a depositor and his bank of deposit is that of creditor and debtor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 289–292; Dec. Dig. ⬅119.]

6. BANKS AND BANKING ⬅138—DEPOSITS—DUTY TO PAY.

There is an implied obligation upon a bank to pay out its depositor's money only upon his order and direction.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. ⬅138.]

7. BANKS AND BANKING ⬅148(1)—DEPOSITS—PAYMENTS OF FORGED CHECK.

Payments by a bank upon forged orders affords no protection to it, unless it can invoke against the depositor the principles of estoppel or of negligence.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 439; Dec. Dig. ⬅148(1).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. LIMITATION OF ACTIONS ⊚⟞21(1), 49(1)—ACTION TO RECOVER—DEPOSITS—
     PAYMENT ON FORGED CHECK.
          When a bank pays a depositor's money on a forged order, it breaks its
     contract with him, and a cause of action for the breach arises, which will
     be outlawed six years after the payment, under Code Civ. Proc. § 382, as
     to limitations.
          [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
     90, 94, 96, 98, 266; Dec. Dig. ⊚⟞21(1), 49(1).]

9. TRIAL ⊚⟞148—MOTION FOR DIRECTED VERDICT—WITHDRAWAL—REQUEST
     FOR SUBMISSION OF ISSUES.
          Where at the close of a case both parties move for the direction of a
     verdict, and one party makes timely withdrawal of his motion, he is not
     entitled to a submission on all the facts, but must point out the specific
     questions he desires submitted.
          [Ed. Note.—For other cases, see Trial, Cent. Dig. § 331; Dec. Dig. ⊚⟞
     148.]

10. ATTORNEY AND CLIENT ⊚⟞150—COMPENSATION—CONTINGENT FEE.
          Where an attorney employed on a contingent basis is discharged be-
     fore completing his service, and the litigation ends successfully for his
     client, the attorney may recover his. contract compensation out of the
     amount thus secured.
          [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 354–
     357; Dec. Dig. ⊚⟞150.]

Appeal from Trial Term, Kings County.

Action by Augustus Parker-Smith against the Prince Manufactur-
ing Company. From a judgment for the plaintiff, and denial of a
new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-
TON, and MILLS, JJ.

Richard T. Greene, of New York City (John L. Feeny, of New York
City, on the brief), for appellant.

James M. Gray, of Brooklyn, for respondent.

JENKS, P. J. The contract, made by defendant with a lawyer,
contemplated his collection of claims of the defendant, as a depositor,
against certain banks for payments upon forged checks. It pro-
vided for an absolute fee, and, in addition, for a contingent fee of
a percentage of any moneys collected. The plaintiff was discharged
before the claims were adjusted, or were collected, and a new attorney
was retained, who collected certain moneys. The defendant sought
to justify this discharge of plaintiff by plea and by proof of his neg-
ligence. At the close of the case both parties moved for a direction
of a verdict, but the defendant made timely withdrawal of its motion,
and asked submission to the jury of certain specified questions, of
which one presented the alleged negligence. The court denied the
motion of the defendant in all respects and directed a full verdict for
the plaintiff.

[1] We think the court erred in its refusal to submit the question
of negligence to the jury. The negligence related to the statute of
limitations. The defendant contended that it was advised wrongly
that it could safely postpone institution of suits upon such claims
pending negotiations for a settlement; that both it and these attor-

neys entered into such negotiations, but, when negotiations failed, some of the claims were outlawed.

The question upon this appeal is whether the proof raised an issue of negligence for the jury, and, if so, can it be said that there was no evidence to sustain a verdict opposite to that directed by the court? McDonald v. Metropolitan St. Ry. Co., 167 N. Y. 70, 60 N. E. 282. Such question of negligence is generally for the jury, under instructions from the court. Shearman and Redfield on Negligence (6th Ed., Street), § 565, citing inter alia Bowman v. Tallman, note, 3 Abb. Dec. 182; Pinkston v. Arrington & Graham, 98 Ala. 489, 13 South. 561.

[2, 3] It does not follow that erroneous advice as to the application of the statute of limitations to a legal remedy is negligence; for there may arise the question whether such error indicates the lack of due professional care and skill. Nor does it follow that the loss of a remedy, through advice which is negligent, constitutes actionable negligence; for there may have remained another remedy equally efficacious.

[4] There are authorities which declare that ignorance of statutes or rules in limitation of legal remedies could justify a finding of culpable negligence. Smedes v. Elmendorf, 3 Johns. 185; Childs v. Comstock, 69 App. Div. 160, 74 N. Y. Supp. 643; Drury v. Butler, 171 Mass. 171, 50 N. E. 527; Estate of A. B., 1 Tuck. 247; Citizens' Loan Fund, etc., v. Friedley, 123 Ind. 147, 23 N. E. 1075, 7 L. R. A. 669, 18 Am. St. Rep. 320; King v. Fourchy, 47 La. Ann. 354, 16 South. 814; Shearman and Redfield on Negligence (6th Ed., Street), § 567; Stevens v. Walker & Dexter, 55 Ill. 151. See, too, Hopping v. Quin, 12 Wend. 517; Thomas on Negligence (2d Ed.) 2173 et seq. Such negligence would constitute a defense to this action. Hopping v. Quin, supra; Cole v. Roby, 16 N. Y. Supp. 20;[1] Carter v. Tallcot, 36 Hun, 393.

[5-7] The relation of the defendant and its bank of deposit was that of creditor and debtor. And there was an implied obligation upon the latter to pay out defendant's money only upon its order, and only upon its direction. Shipman v. Bank S. N. Y., 126 N. Y. 327, 27 N. E. 372, 12 L. R. A. 791, 22 Am. St. Rep. 821; Citizens' Nat. Bank v. Importers & T. Bank, 119 N. Y. 195, 23 N. E. 540. Consequently payments upon forged orders afforded no protection to the bank, unless it could invoke, against the defendant as a depositor, the principles of estoppel or of negligence. Shipman v. Bank, supra. In the eye of the law as to the depositor a forged check paid is not paid, for it is paid upon a pretended order, the funds of the depositor remain unaffected, and thus the debt of the bank to the depositor is unaffected. First Nat. Bank v. Whitman, 94 U. S. 343, 347, 24 L. Ed. 229.

[8] When a bank paid out the defendant's money upon a forged order, it broke its contract with the defendant, and thereupon arose a cause of action for such breach. The claim on each forged check be-

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 61 Hun, 624.

came outlawed six years after each check was paid out of the defendant's deposit. Code of Civil Procedure, § 382. There was no proof in this record that indicated that there was another legal remedy or other legal remedies upon the facts, to which a statute of limitations of longer period than six years could apply, much less one equally efficacious, or that in the exercise of ordinary skill the plaintiff or his associate was justified in concluding that there was such a remedy. The proof relied upon by the defendant is mainly found in the testimony of Colwell, an officer of the defendant, and of Earle, a representative of a large stockholder, who investigated the affairs of the defendant. Both were laymen.

The defendant also insists that the correspondence and the examination of the plaintiff and of his legal associate make for its contention. The evidence adduced by the defendant may be summarized as follows: Soon after retainer, and in November, 1910, the plaintiff and his legal associate (whose services were contemplated by both parties), received certain statements from the accountants who had examined the defendant's books, which statements would have apprised the plaintiff and his associate that after November 7th some of the forged checks were outlawing day by day. The plaintiff or his associate examined these statements, but at first neglected to consider the feature of the statute of limitations. Shortly thereafter the plaintiff and his associate, when visited by Colwell to discuss the advisability and safety of negotiations for settlement before the institution of any legal action, permitted Colwell to believe, as he had been informed, that they had theretofore advised the president of the defendant that the statute ran only from the discovery of the payments, and they then informed Colwell that the statute afforded either six or ten years from that time, and that similar statements were made also to Earle. In reliance upon such advice, negotiations were authorized and were undertaken, both by the plaintiff and by the defendants, but negotiations failed, and when another attorney had been retained, who advised that the statute ran from the time of payment of each check, and suits were begun forthwith, it appeared that some of the checks were outlawed to the aggregate of about $2,000. Upon this issue, the plaintiff relied upon his testimony and that of his associate, and the correspondence.

The summation of plaintiff's case is that he and his associate advised that the safest course forbade delay in legal proceedings, but, despite such advice, the defendant or its representative thought that negotiations would not imperil legal proceedings, which might become necessary if negotiations failed; that in January, 1911, Colwell was told that upon the facts then ascertained the defendant must proceed upon the six-year statute, but that the plaintiffs would not decide then, but that other facts might not make the ten-year statute applicable. In fine, the contention was that the defendant delayed the authorization of legal proceedings upon its own responsibility, after full warning of the risk that might thereby be incurred. There is proof that the defendant discovered the defalcations in October, 1910. There is

proof that the plaintiff went so far as to draft a bill in equity on the 4th, 5th, or 6th of January, 1911.

As we have said heretofore, the present question is whether a verdict opposite to that directed would have been supported by no evidence. Of course we do not decide, nor can it be inferred, that if the plaintiff had prevailed with the jury upon this issue the proof would not have justified the verdict beyond interference by the trial court or by this court.

[9] In view of defendant's motion for a direction, even though its withdrawal from such motion was timely, the defendant was not entitled to a submission upon all of the facts, but was bound to point out the specific questions which it desired to have submitted. Bowers v. Ocean Accident & Guarantee Corp., 110 App. Div. 691, 97 N. Y. Supp. 485, affirmed 187 N. Y. 561, 80 N. E. 1105; Maxwell v. Martin, 130 App. Div. 80, 114 N. Y. Supp. 349; White v. Kenny, 146 App. Div. 803, 131 N. Y. Supp. 416. Under these circumstances, and in view of the new trial, we see no reason why we should express any opinion as to the other questions sought to have been submitted, which are criticized by the learned counsel for the respondent in that they present questions of law or mixed questions of law and of fact.

[10] It is insisted that a verdict which rested upon a computation of the contingency made upon the sum ultimately recovered by the defendant subsequent to the discharge of the plaintiff could have no just foundation, and that in any event the plaintiff could recover only the absolute fee. The rule as now recognized does not support such contention. Andrewes v. Haas, 160 App. Div. 421, 144 N. Y. Supp. 1060; Martin v. Camp, 161 App. Div. 610, 146 N. Y. Supp. 1041; Carlisle v. Barnes, No. 1, 102 App. Div. 573, 92 N. Y. Supp. 917. In affirming Andrewes v. Haas, supra, the Court of Appeals avowedly reserved the question, 214 N. Y. at 259, 108 N. E. 423.

The judgment and order are reversed, and a new trial is granted; costs to abide the event. All concur.